**SO ORDERED.**

**SIGNED this 20th day of May, 2021.**



_Lena Mansori James_

LENA MANSORI JAMES
UNITED STATES BANKRUPTCY JUDGE

---

**UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Donald F. Wellington | ) | Case No. 20-10080 |
|     Debtor. | ) | Chapter 11 |
| _____ | ) | |

ORDER AND OPINION
DENYING CREDITORS' MOTION FOR STAY PENDING APPEAL

THIS CASE came before the Court on the Motion for Stay Pending Appeal (Docket No. 386, the "Motion") filed by creditors AAEB5 Fund 17 LLC and ZSC Nyack Hotel Fund LLC (the "Creditors"). The Creditors request that the Court, pursuant to Federal Bankruptcy Rule of Procedure 8007 and its inherent powers, stay further proceedings regarding distributions to unsecured creditors until a determination is made on its appeal of this Court's Order Sustaining Debtor's Objection to Claim Number 14 and 15 and Denying Creditors' Motion to Allow Late Filed Claims (Docket No. 327, the "Bench Ruling"). In the Bench Ruling, the Court found the Creditors did not meet their burden of demonstrating their failure to timely file the proofs of claim, which were filed five days after the claims bar date, was due to excusable neglect within the meaning of Federal Bankruptcy Rule 9006(b)(1).

The Debtor filed a response opposing the requested relief from stay (Docket No. 397). Creditor Juniper Time Investor, LLC ("Juniper") also filed an objection to the Motion, which was joined by creditor Wells Fargo Bank, N.A. ("Wells Fargo") (Docket No. 394, 395).

The Court held a hearing on May 13, 2021, at which Charles Ivey III appeared on behalf of the Debtor, William Miller appeared as United States Bankruptcy Administrator, James Lanik appeared on behalf of the Creditors, Ashley Edwards appeared on behalf of Wells Fargo, Bruce Goodman appeared for Popular Bank, and Brian Anderson, Chris Bayley, and James Florentine appeared on behalf of Juniper.

For the reasons discussed herein, the Court finds the Creditors fail to satisfy the burden required to issue a stay pending appeal and will therefore deny the Motion.

DISCUSSION

Procedural History

The Court assumes familiarity with the circumstances that prompted the Debtor's bankruptcy filing as well as the complex procedural history of this case but will briefly summarize the pertinent facts and filings that are essential to determining the Motion.[1]

On January 24, 2020, the same day he initiated this chapter 11 case, the Debtor provided notice of the filing by email to the Creditors' state-court attorney, Kirk Brett. A managing member of both Creditors stated in a deposition that she too learned of the Debtor's bankruptcy filing on that same day. In both the schedules and the Notice of Disputed, Contingent, or Unliquidated Claims (Docket No .53, the "Notice"), the Debtor designated the claims of the Creditors as unliquidated, thereby requiring the Creditors to file proofs of claim by the May 20, 2020 claims bar deadline. Despite receiving the Notice at the same addresses the Creditors later provided in their claims, the Creditors did not file proofs of claim

---

[1] A more complete recounting of certain key facts underlying the present dispute can be found in the docketed transcript of the Bench Ruling (Docket No. 365).

until May 25, 2020 (Claim Nos. 14-1 and 15-1), five days after the deadline. The Debtor soon objected to both claims as untimely, and the Creditors responded by filing a motion to allow the late-filed claims (Docket Nos. 146, 206). In September of 2020, while those matters were still pending, the Court entered an Order Confirming the Debtor's Second Modified Plan, which, among other provisions, required the Debtor to liquidate certain of his LLC interests in order to provide a fund of $6,100,000 to holders of allowed general unsecured claims (Docket No. 190, 275). The unsecured claim fund was the byproduct of extensive negotiations and court-approved mediation between the Debtor and certain of his largest creditors, including Wells Fargo, Juniper, and Popular Bank. The Creditors did not participate in that mediation.

The Court issued a bench ruling on December 15, 2020, sustaining the Debtor's objection and denying the Creditors' motion to allow late-filed claims. The Court determined that the factors necessary to a finding of excusable neglect, *see Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993), did not weigh in favor of the Creditors. The Court questioned the Creditors' contention that three of the four *Pioneer* factors weighed in their favor, but even assuming that to be true, found that the Creditors failed to provide explanation for why the claims were filed late and why the delay was not entirely within the Creditors' control, which numerous courts, including the Fourth Circuit Court of Appeals, have found to be the most critical factor in determining excusable neglect. *See Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530 (4th Cir. 1996); *see also Symbionics Inc. v. Ortlieb*, 432 F. App'x 216, 219 (4th Cir. 2011); *Tubens v. Doe*, 976 F.3d 101, 105 (1st Cir. 2020); *In re Scorpion Fitness Inc.*, No. 19-11231, 2020 WL 1670752, at *7 (Bankr. S.D.N.Y. Apr. 3, 2020); *In re Benefit Corner, LLC*, No. 16-11027, 2019 WL 7498664, at *6 (Bankr. M.D.N.C. Dec. 31, 2019).

While the Creditors timely appealed the Bench Ruling on January 14, 2021 (Docket No. 352), "[a]n appeal … does not stay any proceeding of the bankruptcy court … from which the appeal is taken, unless the respective bankruptcy court … in which the appeal is pending, issues a stay of such proceeding pending the

appeal." 28 U.S.C. § 158(d)(2)(D). The Creditors filed the instant Motion seeking a stay to proceedings in the Debtor's bankruptcy case regarding distributions to unsecured creditors, specifically the Joint Motion to Authorize and Direct Second Interim Distributions to Unsecured Creditors (Docket No. 379, the "Second Interim Distribution Motion"). In the Second Interim Distribution Motion, the Debtor requests authority to disburse nearly $2.3 million to unsecured creditors holding allowed claims, which will be taken from the $6.1 million unsecured claim fund (Docket No. 275). In the instant Motion, the Creditors seek a stay pending appeal, under either Federal Rule of Bankruptcy Procedure 8007 or, alternatively, the Court's inherent powers, that would stay any decision on the Second Interim Distribution Motion, and defer any other proposed distributions, pending a determination on the appeal of the Bench Ruling.

<u>Request for Stay Pending Appeal under Fed. R. Bankr. P. 8007</u>

Federal Rule of Bankruptcy Procedure 8007, which governs stays pending appeal in bankruptcy proceedings, requires a party requesting a stay to first seek relief in the bankruptcy court.[2]

"A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is

---

[2] Federal Rule of Bankruptcy Procedure 8007 superseded Federal Rule of Bankruptcy Procedure 8005 as of December 1, 2014 and provides as follows:

    (a) INITIAL MOTION IN THE BANKRUPTCY COURT

        (1) IN GENERAL. Ordinarily, a party must move first in the bankruptcy court for the following relief:

            (A)  a stay of a judgment, order, or decree of the bankruptcy court pending appeal;
            (B)  the approval of a bond or other security provided to obtain a stay of judgment;
            (C)  an order suspending, modifying, restoring, or granting an injunction while an appeal is pending; or
            (D) the suspension of continuation of proceedings in a case or other relief permitted by subdivision (e).

            …

    (e) CONTINUATION OF PROCEEDINGS IN THE BANKRUPTCY COURT. Despite Rule 7062 and subject to the authority of the district court, BAP, or court of appeals, the bankruptcy court may:

        (1) suspend or order the continuation of other proceedings in the case; or

        (2) issue any other appropriate orders during the pendency of an appeal to protect the rights of all parties in interest.

Fed. R. Bankr. P. 8007(a)(1), (e).

dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (cleaned up). A stay pending appeal is considered "extraordinary relief" for which the moving party bears a "heavy burden." *Covington v. North Carolina*, No. 1:15CV399, 2018 WL 604732, at *3 (M.D.N.C. Jan. 26, 2018); *see also Nken*, 556 U.S. at 433–34 (noting "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.").

The standard for determining stays pending appeal remains the traditional four-factor test,[3] requiring consideration of: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The test described by the Supreme Court in *Hilton*, and reaffirmed in *Nken,* is the same test that has traditionally been employed by the Fourth Circuit and the District Court for the Middle District of North Carolina. *See Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970); *Krakauer v. Dish Network, LLC*, 1:14-CV-333, 2021 WL 631906, at *1 (M.D.N.C. Feb. 10, 2021); *Palomo v. Howard*, No. 1:19CV884, 2019 WL 9633647, at *1 (M.D.N.C. Dec. 17, 2019). Pursuant to *Long* and *Hilton*, a court determines a stay pending appeal through "a balancing of the factors," *Long*, 432 F.2d at 981, "such that a stronger showing on some of these prongs can make up for a weaker showing on others." *Ohio Valley Envtl. Coalition, Inc. v. U.S. Army Corps of Eng'rs*, 890 F. Supp. 2d 688, 692 (S.D. W. Va. 2012); *United States v. Springer*, No. 5:12-HC-2009, 2012 WL 4321393, at *1

---

[3] The Creditors do not specify whether they are seeking relief under Federal Bankruptcy Rule 8007(a)(1)(A) or (e). Rule 8007(a)(1)(A) authorizes stays of specific orders pending appeal, while Bankruptcy Rule 8007(e) allows the Court to suspend other proceedings or even the entire bankruptcy case pending appeal. From the Court's review of the Motion, it appears the Creditors are requesting the stay of other proceedings in the bankruptcy case beyond the Bench Ruling, namely, the Second Interim Distribution Motion (Docket No. 379). Therefore, the relief requested is properly sought under Bankruptcy Rule 8007(e). This is, however, "a distinction without a difference" because the standard for a stay pending appeal is the same in either instance. *See, e.g., In re Reed*, No. 18-17566, 2019 WL 5783249, at *2, n. 4 (Bankr. D. Nev. Oct. 17, 2019); *In re Michigan Produce Haulers, Inc.*, No. 14-03188, 2015 WL 1275387, at *2 (Bankr. W.D. Mich. Mar. 19, 2015); *see also* 10 COLLIER ON BANKRUPTCY ¶ 8007.12 n. 4 (16th ed. 2021).

(E.D.N.C. Sept. 20, 2012); *see also Hilton*, 481 U.S. at 777–78 (describing balancing of factors and noting that a strong showing of likelihood of success on appeal can make up for shortcomings on the other factors). While the factors may be balanced, the Supreme Court has reiterated that the first two factors — likelihood of success and irreparable injury absent a stay — "are the most critical." *Nken*, 556 U.S. at 434. The Court, therefore, will consider the Creditors' arguments through the prism of the four-factor test to determine whether the Creditors meet the necessary burden to issue a stay pending appeal.

### 1.    Likelihood of Prevailing on the Merits of the Appeal

Of the two "most critical" factors cited by *Nken*, 556 U.S. at 434, the success or failure of a motion for stay pending appeal most often hinges on the likelihood of success on appeal. *See Hilton*, 481 U.S. at 778 ("The balance may depend to a large extent upon a determination of the State's prospects of success on its appeal."); *see also Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011); *In re Taub*, 470 B.R. 273, 278 (E.D.N.Y. 2012); *Moore v. Keller*, No. 5:11-HC-2148, 2012 WL 2458605, at *2 (E.D.N.C. June 27, 2012). The movant must make a "strong showing" of likely success on appeal, *Nken*, 556 U.S. at 434, and, while the Supreme Court did not clarify what constitutes a "strong showing," it must be "more than a mere 'possibility' of relief[.]" *Id.* (quoting *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999)). As recently described by the Seventh Circuit, "a 'strong' showing thus does not mean proof by a preponderance … [b]ut it normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). Significantly, a party does not meet its burden on this factor by simply restating previous arguments from earlier filings. *Palomo*, 2019 WL 9633647, at *1 (finding movant did not produce any new evidence or arguments that would show he is likely to succeed on the merits and "merely restates arguments and recites cases from his previous filings"); *see also Mayor & City Council of Balt. v. BP P.L.C.*, No. ELH-18-2357, 2019 WL 3464667, at *4 (D. Md. July 31, 2019). A party must instead show "something more" than what

it is has argued previously, i.e., "that the issue to be appealed is an issue of first impression in the circuit, or that district courts have disagreed on the issue." *New York Life Ins. Co. v. Singh*, No. 14-CV-5726(NG)(SMG), 2017 WL 10187669, at *2 (E.D.N.Y. July 13, 2017) (finding a "strong showing" of likely success requires a party "to do more than simply reiterate arguments with which the court has already disagreed.").

Here, the Creditors have not shown they are likely to succeed on the merits of the appeal. Both in the Motion and at the hearing, the Creditors' sole position on this factor, which is duplicative of an earlier argument in favor of allowing the late-filed claims (Docket No. 294, at p. 7), is that the Court, as part of its analysis of whether the Creditors had met their burden of showing excusable neglect under *Pioneer*, improperly relied on potential prejudice to other unsecured creditors. The Creditors flatly state that "*Pioneer* did not include prejudice to other unsecured creditors in its list of factors[,]" and that "[t]his factor alone establishes that [the Creditors] have a substantial likelihood of prevailing on the merits, especially when this factor is balanced with the other factors at issue here" (Docket No. 386, ¶ 26).

In determining whether a party has demonstrated excusable neglect under Federal Bankruptcy Rule 9006, courts must apply the four-factor test described by the Supreme Court in *Pioneer*: (1) danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. 507 U.S. at 385; *see also Symbionics*, 432 F. App'x at 219; *Tyndall v. Maynor*, 288 F.R.D. 103, 110 (M.D.N.C. 2013); *Benefit Corner*, 2019 WL 7498664, at *6. The burden of proving excusable neglect lies with the late-claimant, *Williams v. Virginia*, 524 Fed. Appx. 40, 42 (4th Cir. 2013), which "is not easily demonstrated nor was it intended to be." *Thompson*, 76 F.3d at 534.

In the Bench Ruling, the Court found the Creditors' late-filed claims would significantly reduce the dividend to general unsecured creditors and that there is precedent in this district to consider the potential prejudice to interested parties, including creditors, resulting from the delay. *See In re Diggs*, 220 B.R. 247, 251

7

(Bankr. M.D.N.C. 1998) (favorably citing the Court's previous caselaw finding "creditors filing timely claims are entitled to enjoy an increased dividend, not settle for a lower dividend based on [the tardy claimant] suddenly springing to action.") (internal citation omitted); *In re Montaldo Corp.*, 209 B.R. 40, 48 (Bankr. M.D.N.C. 1997) (finding a seven-month delayed filing did not constitute excusable neglect where, inter alia, the allowance of the creditors "very substantial claim … would prejudice those creditors who timely filed claims because it will reduce significantly the amount that such creditors receive under the Plan."). The Creditors do not address this potential precedent nor provide on-point, countervailing caselaw to that cited in the Bench Ruling.

Most importantly, the Court noted the potential prejudice to other creditors merely to critique the Creditors' contention that three of the four *Pioneer* factors "weigh heavily" in the Creditors' favor. The Court did not rely on this finding in holding that the Creditors failed to demonstrate excusable neglect. Instead, the Court found that, even assuming that three of the factors favored the Creditors,[4] the motion to allow late-filed claims would still fail because the Creditors did not address, then or now, the most pivotal factor: the reason for the delay and whether it was within the Creditors' control.

In the Motion, the Creditors once again do not offer *any* clear answer for why the claims were filed five days after the bar deadline and do not attempt to demonstrate that the delay was outside of their control. In the motion to allow late-filed claims, the Creditors state "the reason for the delay is unknown" because the Creditors' state-court attorney, Kirk Brett, had not responded to requests for information regarding the untimely filing of the claims (Docket No. 206, at ¶ 34). In

---

[4] The Court also questioned whether the "good faith" *Pioneer* factor supported the creditors. Not only is that factor afforded little weight on its own because courts so rarely find a late-filing creditor to be acting in bad faith, *Symbionics*, 432 F. App'x at 219, but courts "have found that inaction during the time period allotted for the filing of claims is an example of a lack of good faith." *In re BI-LO, LLC*, No. 09-02140, 2010 WL 5128848, at *5 (Bankr. D.S.C. July 30, 2010) (internal citation omitted). Despite the Creditors' principal and state-court attorney receiving timely notice of the bankruptcy case and the need to file a proof of claim by the bar date, the Creditors did not point to any actions taken prior to the deadline and did not retain bankruptcy counsel until months later, omissions which could militate against a finding of good faith.

the brief supporting that motion, following the deposition of the Creditors'
principals and Attorney Brett, the Creditors do not reveal any clearer explanation
for the delay and instead, through a case quotation, allude to "careless[ness]"
without any further elaboration (Docket No. 294, at p. 10) (quoting *In re Garden
Ridge Corp.*, 348 B.R. 642, 647 (Bankr. D. Del. 2006)). In fact, the Creditors'
principals passed up all opportunities during the depositions to provide a rationale
for the five-day delay, frequently invoking attorney-client privilege in declining to
answer questions on the issue (Docket No. 300, at pdf pp. 276, 291). The Creditors
have at times alluded to or implied that their counsel neglected to take certain
actions, a rationale which numerous courts have determined does not demonstrate
excusable neglect.[5] Mostly, however, the Creditors ignore and concede the factor,
arguing that the complete lack of explanation does not defeat a finding of excusable
neglect because the other three factors arguably weigh in the Creditors' favor.

The Creditors' decision to thoroughly ignore this factor is crucial because the
overwhelming weight of caselaw holds that this factor can be determinative in and
of itself, even if the other three factors support a finding of excusable neglect.
Arguing to the contrary, the Creditors repeat their earlier arguments, without any
new analysis, that the *Pioneer* factors are intended to be equitably balanced (Docket
No. 386, ¶ 26). In their brief supporting the motion to allow late-filed claims, the
Creditors asserted that this equitable balancing boils down to simple arithmetic, i.e.
excusable neglect exists if three of the four factors support that finding, even if the
movants offer no reason, justified or otherwise, for the delay (Docket No. 294, p. 15).
In the Motion itself and at the May 13th hearing, the Creditors proffered no
additional caselaw and continue to rely heavily on a single case for the premise that

---

[5] *See, e.g.*, *In re Bonfiglio*, No. 18-8004, 2018 WL 5295879, at *4 (6th Cir. B.A.P. Oct. 24, 2018)
(finding that "case law consistently teaches that out-and-out lawyer blunders – the type of action or
inaction that leads to successful malpractice suits by the injured client –" does not qualify as
excusable neglect); *In re BI-LO, LLC*, No. 09-02140, 2010 WL 5128848, at *5 (Bankr. D.S.C. July 30,
2010) ("Courts generally do not rule in favor of claimants … who have neglected to timely file proofs
of claim as a result of their failure to communicate with counsel regarding a legal notice or their own
or their counsel's disregard of the relevant substantive law governing their claim.") (internal citation
omitted).

"[a]ll [*Pioneer*] factors must be considered and balanced; no one factor trumps the others." *Garden Ridge Corp.*, 348 B.R. at 645. Citing *Garden Ridge*, the Creditors assert that offering little to no explanation on the third *Pioneer* factor —the reason for the delay— still allows for a finding of excusable neglect if the other three factors weigh in the Creditors' favor. *Id.* at 647 (citing *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 188 F.3d 116, 128 (3d Cir. 1999)).

In *Garden Ridge*, the Bankruptcy Court for the District of Delaware found that the movant's explanation for delay, specifically that it was "careless in its obligation to file its claim by the deadline," weighed against it for purposes of *Pioneer. Garden Ridge Corp.*, 348 B.R. at 646. Nevertheless, *Garden Ridge* still concluded that excusable neglect was present by finding that the other three *Pioneer* factors weighed in favor of the movant. *Id.* The *Garden Ridge* approach to balancing the *Pioneer* factors, however, overextends the Third Circuit cases it relies upon for support and is directly contrary to Fourth Circuit jurisprudence and emerging excusable neglect caselaw.

*Garden Ridge* relies chiefly upon two decisions of the Third Circuit Court of Appeals for its approach to balancing the *Pioneer* factors. *See Hefta v. Official Comm. of Unsecured Creditors (In re American Classic Voyages Co.)*, 405 F.3d 127 (3d Cir. 2005); *O'Brien*, 188 F.3d 116. While *Hefta* generally noted that "no one factor trumps the others[,]" the court also stated "[w]e rely, however, primarily on the third *Pioneer* factor[,]" concluding that "the delay in this case was entirely avoidable and within [the movant's] control." *Hefta*, 405 F.3d at 134. *Garden Ridge* also moves beyond the other Third Circuit case it cites, *O'Brien*, 188 F.3d 116. In contrast to *Garden Ridge*, *O'Brien* did not find excusable neglect where the third *Pioneer* factor weighed completely against the movant, instead finding that, while the movant may have exhibited lack of care, the debtor was also at fault because it "failed to properly alert and notify" the movant of the need to timely act. *Id.* at 129–30.[6] Neither *O'Brien* nor *Hefta* extended excusable neglect to instances in which the

---

[6] In contrast to *O'Brien*, the Notice sent to the Creditors here was clear and unequivocal that the Creditors' claims were listed as unliquidated and that the Creditors would need to file a claim by the

movant offered nothing beyond a general reference to carelessness to explain its delay.

Most importantly for purposes of the Bench Ruling, the Fourth Circuit's clearly stated approach to *Pioneer* cuts firmly against *Garden Ridge* and holds that "the most important of the factors identified in *Pioneer* for determining whether 'neglect' is 'excusable' is the reason for the failure" to act in a timely fashion. *Thompson*, 76 F.3d at 534; *Symbionics*, 432 F. App'x at 219. In *Thompson*, the Fourth Circuit focused exclusively on the reason for the delay and "did not even consider the other three factors." *Brendle's Inc. v. Dazey Corp.*, No. 1:97CV975, 1998 U.S. Dist. LEXIS 7746, at *12 (M.D.N.C. Mar. 9, 1998) (citing *Thompson*, 76 F.3d at 534). In *Symbionics*, the Fourth Circuit reemphasized that the reason for the delay "is the most important to the excusable neglect inquiry" because the first two *Pioneer* factors will almost always favor the movant and the fourth factor, good faith, "is seldom at issue in excusable neglect cases." *Symbionics*, 432 F. App'x at 219; *see also Benefit Corner,* 2019 WL 7498664, at *6.

This emphasis on the third *Pioneer* factor is also reflected in the recent trend of excusable neglect case law. In adopting the same position, the First Circuit recently concluded that "[t]here is ultimately a thumb on the scale because within

---

proof of claim deadline in order to receive distributions (Docket No. 53). There is no evidence of chicanery or sleight-of-hand of the kind discussed in *O'Brien* that would have contributed to the Creditors' carelessness. *O'Brien*, 188 F.3d 116 (3d Cir. 1999). In the Bench Ruling, the Court was not persuaded by the Creditors' argument that the Debtor's improper listing of the claims as unliquidated should be a strong basis for finding excusable neglect. The Debtor provided justification for listing the Creditors' claims as unliquidated (Docket No. 291, at p. 8-9), but any analysis of this reasoning was unnecessary because the purported inaccuracy of the Debtor's designations does not excuse the Creditors from the obligation of filing a proof of claim. For purposes of Rule 3003(c), "it makes no difference what grounds (if any) the debtor had for scheduling the claim as disputed, contingent or unliquidated. All that matters is whether the claim was scheduled with one of these three designations." *In re LMM Sports Management, LLC*, No. AZ-15-1195, 2016 WL 3213829, at *6 (9th Cir. B.A.P. June 1, 2016); *see also In re I & I Pizza of Atlanta, Inc.*, No. 18-51404, 2019 WL 2867105, at *3 (Bankr. N.D. Ga. July 2, 2019). As the Ninth Circuit Bankruptcy Appellate Panel noted, "there are an array of remedies available in the event that a debtor knowingly and intentionally files inaccurate schedules[,]" such as sanctions or denial of discharge, but "[e]xcusing creditors from the obligation to file a proof if claim is not one of the available remedies." *In re LMM*, 2016 WL 3213829, at *6. Accordingly, the Creditors' contention that the Debtor incorrectly designated the claims as unliquidated does not form a basis for finding excusable neglect and treating those claims as timely filed.

11

the constellation of relevant [*Pioneer*] factors, the most important is the reason for the particular oversight." *Tubens v. Doe*, 976 F.3d 101, 105 (1st Cir. 2020) (internal citation omitted). Similarly, the Bankruptcy Court for the Southern District of New York concluded that "failure to identify a good and sufficient excuse for the missed deadline is sufficient grounds for the denial of relief, even if all of the other [*Pioneer*] factors weigh in [their] favor." *Scorpion Fitness*, 2020 WL 1670752, at *7.

Excusable neglect "is not easily demonstrated nor was it intended to be[,]" *Thompson*, 76 F.3d at 534, and adopting *Garden Ridge's* approach would extend beyond recognition what was intended to be a narrow exception to late-filings. *See Symbionics*, 432 F. App'x at 220 (holding that a court "should find excusable neglect only in the *extraordinary cases* where injustice would otherwise result.") (emphasis original). Relying on *Garden Ridge*'s approach to *Pioneer*, the Creditors assert "that there is at least some likelihood that we will be successful on this appeal" (Docket No. 411). The Creditors, however, must offer "more than a mere 'possibility' of relief[,]" *Nken*, 556 U.S. at 434 (internal citation omitted), and, given the clear statements of the Fourth Circuit Court of Appeals and the growing trend of cases from outside this Circuit finding that the reason for the delay is the most important *Pioneer* factor in an excusable neglect analysis, the Court finds the Creditors fall well short of the required "strong showing" of likelihood of success on appeal. Consequently, this factor weighs against granting a stay.

2.    <em>Irreparable Injury to the Moving Part if the Stay is Denied</em>

The second of the "most critical" factors is whether the movant will be irreparably injured absent a stay. *Nken*, 556 U.S. at 434. "[S]imply showing some possibility of irreparable injury fails to satisfy the second factor." *Id. (*internal citation omitted). Importantly, the Fourth Circuit has emphasized that irreparable injury must be more than monetary loss. *Long v. Robinson*, 432 F.2d 977, 980 (4th Cir. 1970). "[M]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough." *Id.* When a movant's harm "may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable." *Allen v. Fitzgerald*,

590 B.R. 352, 360 (W.D. Va. 2018) (quoting *Hughes Network Sys. Inc. v. Interdigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994)). Nevertheless, in applying this factor within the context of a preliminary injunction, the Fourth Circuit noted that, "[e]ven if a loss can be compensated by money damages at judgment," irreparable harm could still possibly be shown "where the moving party's business cannot survive absent a preliminary injunction or where damages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected." *Hughes*, 17 F.3d at 694 (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)). *Hughes* cautioned, however, that "[t]hese situations are quite narrow, reflecting instances where the harm suffered by the plaintiff from denying the injunction is especially high in comparison to the harm suffered by the defendant in granting it." *Id.; see also Allen*, 590 B.R. at 360–61 (applying the two *Hughes* exceptions within the context of a bankruptcy appeal); *BDC Capital Inc. v. Thoburn Ltd. P'ship*, 508 B.R. 633, 639 (E.D. Va. 2014) (same). As with every factor, the movant bears the burden of producing evidence to support a finding of irreparable harm. *Allen*, 590 B.R. at 361; *Karsjens v. Jesson*, No. CV 11-3659, 2015 WL 7432333, at *5 (D. Minn. Nov. 23, 2015).

Here, the Creditors point only to potential monetary injuries that would accompany denial of a stay. First, the Creditors assert they will be unable to recover the lost time and costs associated with pursuing disgorgement actions. These purported damages would not only apply to nearly every appellant seeking a stay but are precisely of the kind the Fourth Circuit has found insufficient to demonstrate irreparable injury. *Long*, 432 F.2d at 980. "[T]he monetary and administrative costs of complying with a court order absent a stay are not sufficient to establish irreparable injury." *Fitzgerald v. Delafield (In re Williams)*, No. 15-71767, 2018 Bankr. LEXIS 2320, at *13 (Bankr. W.D. Va. May 14, 2018).

The Creditors also attempt to cast doubt on other creditors' capacity to disgorge the full amount of any distributions received, but the Creditors fail to produce the evidence needed to merit the *Hughes* exception for instances in which damages may be unobtainable due to a non-movant's potential insolvency. The

Creditors offered no evidence at the hearing on the Motion. Instead, the Creditors refer broadly in the Motion to "the uncertain realities of economic recovery in light of the COVID-19 coronavirus pandemic" and assert, "upon information and belief[,]" that Juniper and its affiliates invest largely in hospitality properties, an industry that has been "significantly and adversely affected" by the pandemic (Docket No. 386, ¶ 27 n. 3). This assertion is supported only by a local business journal article from March 2019, which was not offered into evidence at the hearing, comments generally on the investment practices of Juniper, and says nothing of its current financial state, the impact of the pandemic on Juniper's investments, or any other reason to believe Juniper may become insolvent prior to disgorging any required funds in the event the Creditors succeed on appeal.

Accordingly, the Court finds the Creditors have failed to meet their burden of demonstrating irreparable injury. The potential injuries are monetary and can be remedied by an award of money damages at judgment. The Creditors' broad, industry-wide arguments about the potential financial instability of certain creditors does not approach the evidentiary burden required for the narrow exception described in *Hughes*. 17 F.3d at 694. Consequently, the Court finds this factor weighs against granting a stay.

### 3.    *Substantial Harm to Non-Moving Parties*

Having considered the two "critical factors," *Nken*, 556 U.S. at 434, "the analysis shifts to the lesser two, harm to other parties and considering of the public interest." *In re Commonwealth Renewable Energy, Inc.*, No. 14-22724-GLT, 2016 WL 1238199, at *2 (Bankr. W.D. Pa. Feb. 10, 2016). The third factor requires the Creditors to show that non-movants will not suffer substantial harm if the stay is granted. "In other words, the moving party must show that the balance of harms tips in favor of granting the stay." *In re Stewart*, 604 B.R. 900, 908 (Bankr. W.D. Okla. 2019) (quoting *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 349 (S.D.N.Y. 2007)). Unlike the second factor, the harm to non-movants need only be substantial, not irreparable, and a non-movant's ability to financially recover from a harm does

not necessarily make that harm insubstantial. *Amazon.com, Inc. v. WDC Holdings LLC*, No. 1:20-CV-00484, 2020 WL 7680552, at *2 (E.D. Va. Sept. 4, 2020).

The Creditors argue there is no harm to non-movants as the plan is already confirmed and the eventual allowance of the Creditors' claims on appeal would only change the scheme of distributions, not the overall amount (Docket No. 386, ¶ 28). The Court agrees that a stay would not substantially injure the estate but does find the other creditors would suffer substantial harm due to the further delay in payment that would accompany a stay. The creditor class has already expended several years in litigation, through both state-court and bankruptcy proceedings, pursuing claims against the Debtor from a series of failed real estate investments. The $6,100,000 fund set aside for general unsecured creditors was the product of extensive negotiations and mediation with the Debtor, would completely resolve the ongoing litigation, and would provide some measure of recovery for those creditors after years of efforts. As emphasized by Juniper and Wells Fargo, the Creditors did not participate in those negotiations, did not timely file claims, and filed an appeal that the Court has already determined is unlikely to succeed and which would, if a stay is granted, further delay any distributions to the unsecured creditor class.

Bearing in mind that the Creditors have proffered no harm that is irreparable and have the ability to seek monetary compensation in the event of a successful appeal, the Court finds the further delay to the payments owed to other creditors is sufficiently substantial to tilt this factor against the granting of a stay. *See, e.g.*, *In re Stewart*, 604 B.R. at 908-09 (finding balance of harms favored non-movants where appellant could seek monetary compensation if successful on appeal and where non-movants would be further constrained by continued adversary proceedings); *Rose v. Logan*, No. BR 12-25471-RAG, 2014 WL 3616380, at *4 (D. Md. July 21, 2014) (finding, where court proceedings had lasted over year, that a stay would substantially injure creditors because it would delay payments owed to the creditors by the appellant and the debtor); *In re Quad*e, 496 B.R. 520, 529–30 (Bankr. N.D. Ill. 2013) (noting that "harm to other parties in interest, namely other

creditors, is also considered" in determining a stay pending appeal.). Accordingly, the Court finds this third factor also weighs against granting a stay.

### 4.   The Public Interest

The final factor considers whether the stay is in the public interest. *Long*, 432 F.2d at 979. A stay will impact the public interest if it has "consequences beyond the immediate parties." *In re Revel AC, Inc.*, 802 F.3d 558, 569 (3d Cir. 2015); *Roland Mach.*, 749 F.2d at 388.

The public interest in the issuance of a stay in this case is minimal or non-existent. Given the nature of this dispute between a wealthy Debtor-financier and his investment-minded creditors seeking recoupment of funds from a failed real estate development in New York, there is no overwhelming public interest involved in this case. *See, e.g., Obsidian Solutions Grp., LLC v. United States*, No. 20-1602C, 2021 WL 1688892, at *7 (Fed. Cl. Apr. 27, 2021) ("The immediate practical effect of the Court's decision is limited, applicable only to the present case. Therefore, the public interest in the issuance of a stay is minimal."); *Amazon.com, Inc.*, 2020 WL 7680552, at *3 ("The court is inclined to agree with Defendants' concession that there is no overwhelming public interest involved in this case."); *In re Edwards*, 228 B.R. 573, 581 (Bankr. E.D. Pa. 1999) (finding no public interest to be served in what was "essentially a private dispute between shareholders of a closely held enterprise.")

Any minimal public interests implicated here tilt toward denying a stay. The public interest, for instance, "recognizes the desirability of implementing the legitimate expectations of creditors … to get paid." *In re Moore*, No. 20-40309-EJC, 2020 WL 5633081, at *8 (Bankr. S.D. Ga. Aug. 27, 2020) (citing *In re Motors Liquidation Co.*, 539 B.R. 676, 685 (Bankr. S.D.N.Y. 2015)). The public also maintains an interest "in finality and prompt resolution of debts[,]" *Kelly v. Grigsby*, No. PX-18-2345, 2019 U.S. Dist. LEXIS 30961, at *5 (D. Md. Feb. 26, 2019), which is supported in part by the establishment and enforcement of a bar date for filing claims. *In re US Airways, Inc.*, No. 04-13819-SSM, 2005 WL 3676186, at *7 (Bankr.

E.D. Va. Nov. 21, 2005). Judge Stocks, speaking for this Court in a prior decision, summarized the important policy considerations undergirding the claims bar deadline in a chapter 11 case:

> Finally, regarding the impact of allowing the late filed claim on the judicial process, it is important to recognize that the claims bar date in a Chapter 11 case is not merely a procedural gauntlet. It serves a useful and important purpose because it allows parties in interest to determine the identity of those making claims against the estate and the amount of those claims. Adherence to the bar date furthers this important policy.

*In re Montaldo*, 209 B.R. at 49 (internal citation omitted).

For their part, the Creditors put forth the generic assertion that the "public interest in judicial accuracy" favors granting a stay (Docket No. 386, ¶ 29). While judicial accuracy is generally in the public interest, such an argument could apply to every appeal and every motion for stay pending appeal. At the hearing, the Creditors' attorney himself conceded that "[o]bviously [judicial accuracy] is an interest that is in every single case" (Docket No. 411). Moreover, "a stay pending appeal is not necessary to ensure that the controlling law is followed" because the Creditors' appeal will be heard and decided in accordance with the law whether or not a stay is granted by this Court. *In re Moss*, No. 12-61093-7, 2013 WL 5979750, at *2 (Bankr. D. Mont. Nov. 12, 2013).

For these reasons, the Court finds the Creditors failed to satisfy their burden for a stay pending appeal with respect to the fourth factor.

*Balancing the Factors*

The Court finds the four factors for analyzing a motion for stay pending appeal under Federal Bankruptcy Rule 8007 weigh decisively against issuing a stay and the Creditors' Motion should therefore be denied.

Request for Stay Pending Appeal under the Court's Inherent Powers

Alternatively, the Creditors seek a stay of all distributions to unsecured creditors pursuant to the Court's inherent authority. The Court declines to issue such a stay for the following reasons. First, it is unclear that the test a court would apply to determine a stay pending appeal under its inherent authority would be any

different than the four-factor "traditional" test referenced by the Supreme Court in *Nken*, 556 U.S. at 433. Second, a federal court should not resort to its inherent powers for procedural questions where the federal rules provide explicit guidance on the subject. While federal courts have inherent authority that extends beyond the authority provided by the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure, this Court "may not exercise its inherent authority in a manner inconsistent with rule or statute." *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 652 (7th Cir. 1989). In other words, "where the rules directly mandate a specific procedure to the exclusion of others, inherent authority is proscribed." *Id.* at 652 (internal citation omitted); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) (holding that a court must "exercise caution in invoking its inherent powers"); *Bank of N.S. v. United States*, 487 U.S. 250, 255 (1988) (holding federal courts have no more discretion to disregard the mandate of Federal Rule of Criminal Procedure 52(a) than they do to disregard constitutional or statutory provisions). Therefore, the Court will refrain from issuing a stay pending appeal based on in its inherent powers and the alternative relief sought by the Creditors is denied.

CONCLUSION

For the reasons discussed above, IT IS HEREBY ORDERED that the Motion for Stay Pending Appeal filed by AAEB5 Fund 17 LLC and ZSC Nyack Hotel Fund LLC is DENIED.

**END OF DOCUMENT**

PARTIES TO BE SERVED

Donald F. Wellington (Ch.11)

20-10080

*Via CM / ECF:*
Charles M. Ivey, III
Dirk W. Siegmund
William P. Miller, BA
James Lanik
Brian R. Anderson
Christopher H. Bayley
John Paul H. Cournoyer
Ashley A. Edwards
James G. Florentine
Jamey M. Lowdermilk.
Clint S. Morse
Walter W. Pitt, Jr.
Felton E. Parrish

Donald F Wellington
2906 Old Lexington Road
Asheboro, NC 27205

AAEB5 Fund 17, LLC
Attn: Steven Richman
680 Fifth Avenue, 10th Floor
New York, NY 10019

ZSC Nyack Hotel Fund, LLC
Attn: Steven Richman
680 Fifth Avenue, 10th Floor
New York, NY 10019